IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

GARY JACOBSEN and AUTO ONE INC.,

                      Plaintiffs,

v.

CASS COUNTY, MISSOURI SHERIFF
JEFF WEBER and MICHAEL
KLINEFELTER,

                      Defendants.

Case No. 4:18-cv-00557-NKL

# ORDER

Defendants Cass County, Missouri, Sheriff Jeff Weber, and Deputy Sheriff Mike Klinefelter move for summary judgment dismissing all of the claims against them. Doc. 40. For the reasons set forth below, Defendants' motion is granted.

## I.    Uncontroverted Facts[1]

Defendant Michael Klinefelter is a Deputy Sheriff in Cass County, Missouri. Doc. 41 (Defendants' Suggestions in Support of Summary Judgment), p. 10-11; Doc. 47 (Plaintiffs' Suggestions in Opposition to Defendants' Motion for Summary Judgment), p. 4.

On June 27, 2017, Klinefelter was working "extra duty" at the ADESA Auto Auction in Belton, Missouri in his capacity as a Cass County Sheriff's Deputy. Doc. 41, p. 11; Doc. 47, p. 5. ADESA also contracted with third-party security companies to provide unarmed security, such as Candice Giles-Rucker, who was working security at the front entrance of ADESA on June 27,

---

[1] The Court has considered the parties' statements of material facts insofar as they are supported by evidence and has drawn all inferences in favor of the non-movants. *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 726 (8th Cir. 2012).

2017. Doc. 41, p. 11; Doc. 47, p. 5. ADESA gave instructions to Cass County Sheriff Deputies, including Klinefelter, to protect ADESA employees and property. Doc. 41, p. 11-12; Doc. 47, p. 5. ADESA also instructed the Sheriff Deputies as to who would be authorized to attend the ADESA Auto Auction. Doc. 41, p. 11-12; Doc. 47, p. 5. The "auction access card" authorized dealers to enter the ADESA premises on auction days. Doc. 41, p. 11-12; Doc. 47, p. 5. However, in order for an authorized dealer to participate in the auction, the dealer would need to obtain a "bidder badge" for the day's auction. Doc. 41, p. 11-12; Doc. 47, p. 5. A "bidder badge" could be obtained electronically from a kiosk/machine on the ADESA premises or from one of the ADESA clerks. Doc. 41, p. 11-12; Doc. 47, p. 5.

On the morning of June 27, 2017, Jacobsen entered the ADESA Auto Auction building; private security officer Candice Giles-Rucker was at the front door and requested that Jacobsen show his Access Badge. Doc. 41, p. 13; Doc. 47, p. 7.

What happened next is in dispute. However, multiple sworn statements by ADESA agents substantiate Klinefelter's claims that Jacobsen refused to show Klinefelter the requisite badge and refused to comply with multiple directives by Klinefelter, including instructions to leave and to cease resisting. *See* Doc. 41-5 (Affidavit of Candace Giles-Rucker), ¶¶ 5, 7, 8, 10 (stating that Jacobsen refused to show Klinefelter his badge, refused to leave, and hit Klinefelter in the head area); Doc. 41-6 (Declaration of Witness Deborah Cowans), ¶ 5 ("Deputy Klinefelter stepped in and requested Mr. Jacobsen's [*sic*] show the correct Auction Access Card or his daily bid badge, Mr. Jacobsen appeared to ignore his multiple requests and continued walking past him towards the auction arena."); Doc. 41-9 (Declaration of Witness Lisa Shifferdecker), ¶¶ 3, 5-6 ("On June 27, 2017, I was walking towards the Accounting Office when I saw Deputy Klinefelter telling a man (now known to be Gary Jacobsen) to leave the facility. . . . Mr. Jacobsen would not obey the

commands of the Deputy. It appeared to me that Deputy Klinefelter motioned multiple times for Mr. Jacobsen to leave that area of the building by motioning towards the entry doors. Mr. Jacobsen, seemed to me, to resist or ignore the Deputy and continued to walk towards his unknown destination."); Doc. 41-10 (Declaration of Witness Paul Dewet), ¶¶ 5, 7-8 (stating that Klinefelter repeatedly told Jacobsen not to go into a restricted area, and Jacobsen repeatedly ignored him); Doc. 41-11 (Declaration of Witness Tricia Schiefelbusch), ¶¶ 4-5 ("I recall the Deputy following behind a man stating something to the effect of, 'Sir, I need to see your access card,' on multiple occasions, and then asked the man to leave. Mr. Jacobsen appeared to me to not respond to the Deputy's request."). Jacobsen also acknowledged that video shows Klinefelter "stepping in front of" Jacobsen and "pointing towards the front of the auction house." Doc. 41-12 (Deposition of Gary Ray Jacobsen, dated March 5, 2019), Tr. 71:25-72:4.

It is uncontested that, after the dispute concerning the proper identification, Klinefelter permitted Jacobsen to try to locate a manager. *Id.*, Tr. 72:18-24.

At some point, however, when Jacobsen's efforts to find a manager were unsuccessful, Klinefelter, according to Jacobsen, tried to "physically remove Jacobsen" and Jacobsen "shoved him off because [Jacobsen] had just had a vasectomy and [Jacobsen] had told [Klinefelter]." *Id.*, Tr. 84:6-12.

The gentlemen engaged in a physical altercation. The video evidence does not show the beginning of the altercation, and the parties dispute how the altercation began. However, Rucker stated that she saw Jacobsen, whom she suspected to be "under the influence of some sort of drug" or otherwise "intoxicated," "take a swing at Deputy Klinefelter hitting him somewhere in the head area," and then a "[a] fight began between the two of them, and Mr. Jacobsen was throwing Deputy Klinefelter around like a rag doll." Doc. 41-5, ¶¶ 9-10. Another ADESA witness stated, "When I

rounded the corner, I saw the Deputy with Mr. Jacobsen up against the wall. The Deputy told him to 'Stop!' and Mr. Jacobsen continued to struggle and was trying to escape." Doc. 41-8 (Declaration of Witness Kevin Rhoads), ¶¶ 9-12.

Jacobsen does not deny that Klinefelter warned Jacobsen that he would use his pepper spray if Jacobsen did not leave. Doc. 41, pp. 14-15; Doc. 47, p. 9 (denying only that Jacobsen cursed at Klinefelter). Klinefelter in fact attempted to spray Jacobsen. Klinefelter claims that the spray malfunctioned. Rhoads similarly stated that Klinefelter "attempted to pepper spray Mr. Jacobsen when the can fizzled . . . ." Doc. 41-8, ¶ 11; *see also* Doc. 41-5 ("Deputy Klinefelter had just gotten his pepper spray from his belt and Mr. Jacobsen snatched it out of his hand and tried to spray it. It did not appear to go anywhere.").

There is no dispute that Jacobsen grabbed the pepper spray from Klinefelter's hand. Doc. 47, p. 9. Jacobsen says he believed that Klinefelter attempted to intentionally spray his eye, and therefore "defensively reached for the hand in which [Klinefelter] had the pepper spray against Jacobsen's face and took the pepper spray can out of [Klinefelter]'s hand." Doc. 47, p. 9. Rucker states that "Deputy Klinefelter had just gotten his pepper spray from his belt" when "Mr. Jacobsen snatched it out of his hand and tried to spray it." Doc. 41-5, ¶ 11.

Rhoads stated that Jacobsen continued to "refuse[] to obey the Deputy's commands to get down on the ground." Doc. 41-8, ¶ 12. Similarly, Schiefelbusch stated that, after the altercation began, Jacobsen "was not complying with the Deputy's requests" and the two men "were grabbing each other . . . ." Doc. 41-11, ¶ 10. Even Jacobsen acknowledged that he "had Deputy Klinefelter at one point pinned up against the wall," and "was resisting." Doc. 41-12, Tr. 85:16-86:24. However, Jacobsen claimed he was "fight[ing]" "[b]ecause [he] was assaulted" and he was merely "defending [him]self." *Id*.

4

At his deposition, Jacobsen stated that, to his knowledge, the only force that Klinefelter used against him was "his hands and/or pepper spray." Doc. 47-13, Tr. 87:6-9. Later in that same deposition, however, Jacobsen stated, "he might have kneed me in the leg or what have you." *Id.*, Tr. 147:22-148:5. In his papers opposing summary judgment, however, Jacobsen asserts (with citations that do not actually support the claim) that Jacobsen was "knee kicking him" or "leg kicking" him. Doc. 47, p. 9.

Before attempting to use the pepper spray, Deputy Klinefelter had called for backup. Doc. 41, p. 16, Doc. 47, p. 10. Deputy Sheriff Evan Hicks arrived as Jacobsen had Klinefelter pinned against the wall and was actively fighting him. Doc. 41, p. 16, Doc. 47, p. 10. Deputy Hicks was in fear for Deputy Klinefelter's safety. Doc. 41, p. 16, Doc. 47, p. 10.

Hicks and Jacobsen took Jacobsen to the ground and placed him in handcuffs. Doc. 41, p. 16; Doc. 47, p. 10. Jacobsen was then escorted outside. Doc. 41, p. 16; Doc. 47, p. 10. Paramedics on scene flushed Jacobsen's eyes with water. Doc. 41, p. 16; Doc. 47, p. 10. However, no other medical treatment at the scene was necessary. Doc. 41, p. 16; Doc. 47, p. 10. Jacobsen received no other medical treatment and never sought counseling or other psychiatric treatment as a result of the incident. Doc. 41, p. 16; Doc. 47, p. 10.

The Cass County prosecutor filed a felony Complaint and Misdemeanor Information against Jacobsen. Doc. 41, ¶ p. 16; Doc. 47, p. ¶ 10. The Circuit Court of Cass County issued an arrest warrant based on the prosecutor's complaint. Doc. 41, ¶ p. 16; Doc. 47, p. ¶ 10. Jacobsen's criminal defense counsel did not file a motion to dismiss the charges for lack of probable cause for the arrest. Doc. 41, p. 17; Doc. 47, p. 11. Jacobsen entered an Alford plea to the reduced charge of disturbing the peace and paid a fine. Doc. 41, p. 17; Doc. 47, p. 11.

Klinefelter is POST certified and trained in the use of force and certified in the use of OC pepper spray. Doc. 41, pp. 10-11; Doc. 47, p. 4. Prior to this incident, Klinefelter had no complaints for use of excessive force, wrongful arrest, or any constitutional violation and has never been sued relating to any action as a law enforcement officer, other than in this case. Doc. 41, p. 10; Doc. 47, p. 4.

Cass County Sheriff Jeff Weber was elected and became Sheriff in January 2017, after serving as Undersheriff of Cass County for several years. Doc. 41, p. 17; Doc. 47, p. 12. Sheriff Weber was not present at ADESA on June 27, 2017 and had no prior involvement with Jacobsen. Doc. 41, p. 17; Doc. 47, p. 12.

Jacobsen and his wholly-owned corporation Auto One Inc. sued Klinefelter as well as Sheriff Weber in both his official and individual capacities.

On June 27, 2019, after Defendants moved for summary judgment on all claims, Plaintiffs filed a notice of voluntary dismissal, without prejudice, of their claims against defendant Weber, individually and in his official capacity. Doc. 45.

## II. Summary Judgment Standard

"Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Durham D &M, LLC*, 606 F.3d 513, 518 (8th Cir. 2010) (citing *Johnson v. Ready Mixed Concrete Co.*, 424 F.3d 806, 810 (8th Cir. 2005)); Fed. R. Civ. P. 56(a). The Court must enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). While the moving party bears the burden of establishing a lack of any

genuine issues of material fact, *Brunsting v. Lutsen Mountains Corp.*, 601 F.3d 813, 820 (8th Cir. 2010), the party opposing summary judgment "must set forth specific facts showing that there is a genuine issue of material fact for trial." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." *Id*.

**III.  Discussion**

Defendants seek summary judgment as to each of the Plaintiffs' four claims.

**A.  Claims Against Defendant Weber**

Plaintiffs filed a notice purporting to dismiss without prejudice the claims against Defendant Weber. Federal Rule of Civil Procedure 41(a) permits a plaintiff to dismiss an action without a court order by filing "a notice of dismissal *before* the opposing party serves either an answer or a motion for summary judgment" or by filing "a stipulation of dismissal signed by all parties who have appeared." Plaintiffs' notice of dismissal was not filed before Weber answered and moved for summary judgment, and therefore it does not serve to dismiss the claims against Weber.

In the notice, Plaintiffs stated that they "have elected not to pursue the 42 U.S.C. § 1983 claim against Weber and have dismissed that claim because Plaintiffs have learned during the course of discovery that Sheriff Weber was not elected until November 2016 and did not take office until January 2017, after the policies governing and applying to [Klinefelter]'s actions on extra duty were established." In light of this admission and the fact that Plaintiffs did not respond to Defendants' arguments as to why the claims against the Sheriff in his individual and official capacities should be dismissed, dismissal with prejudice of Plaintiffs' claims against Weber, in both his official and individual capacities, is appropriate.

7

### B. Claims against Defendant Klinefelter

Jacobsen asserted the following claims against Klinefelter: (1) excessive use of force "and/or" wrongful or unlawful detention in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution; (2) negligent infliction of emotional distress; (3) battery; and (4) tortious interference with economic expectancy. Auto One joined in the tortious-interference claim. Klinefelter argues that all of the claims must be dismissed on immunity grounds.

#### i. Qualified Immunity

Klinefelter argues that the doctrine of qualified immunity shields him from Jacobsen's constitutional claim.

"In § 1983 actions, qualified immunity shields government officials from liability unless their conduct violated a clearly established constitutional or statutory right of which a reasonable official would have known." *Bishop v. Glazier*, 723 F.3d 957, 961 (8th Cir. 2013) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))). "The 'clearly established' standard . . . requires that the legal principle . . . be so well defined that it is 'clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Dist. of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 590, 199 L. Ed. 2d 453 (2018) (citations omitted).

Upon a defendant's raising the qualified immunity defense in a summary judgment motion, "the plaintiff must produce evidence sufficient to create a genuine issue of fact regarding whether the defendant violated a clearly established right." *Bishop*, 723 F.3d at 961 (citation omitted). The "plaintiff bears the burden of proving that the law was clearly established." *Hess v. Ables*, 714 F.3d 1048, 1051 (8th Cir. 2013).

Jacobsen has not met his burden of establishing that Klinefelter violated a right that was clearly established. The undisputed facts and the evidence, even construed in the light most favorable to Jacobsen, establish the following sequence: After Jacobsen entered the ADESA premises, ADESA security and Klinefelter disagreed with Jacobsen as to whether Jacobsen had produced sufficient identification to proceed. Doc. 47, p 7. Klinefelter gestured to Jacobsen to leave the premises. Doc. 41-12, Tr. 71:25-72:4 (admitting that video showed that Klinefelter stepped in front of Jacobsen and pointed towards the front of the auction house). Jacobsen then asked for, and Klinefelter allowed him, the opportunity to try to locate a manager. *Id.*, Tr. 72:18-24. After Jacobsen's efforts to locate a manager failed, Klinefelter attempted to make Jacobsen leave. *Id.*, Tr. 84:6-12. Jacobsen did not leave. Instead, when Klinefelter attempted to remove him, Jacobsen "shoved [Klinefelter] off," purportedly because Jacobsen had had a vasectomy (which fact he had already divulged to Klinefelter). *Id.* Klinefelter warned Jacobsen that he would administer pepper spray if he did not leave. Doc. 41, pp. 14-15; Doc. 47, p. 9. Still, Jacobsen did not leave. Klinefelter attempted to spray Jacobsen. Doc. 41, p. 15; Doc. 47, p. 9. Klinefelter may have succeeded in spraying Jacobsen, including in his eye. Doc. 47, p. 9. Jacobsen grabbed the spray from Klinefelter. Doc. 41, p. 15; Doc. 47, p. 9. The men engaged in a physical altercation. Jacobsen admitted that he "had Deputy Klinefelter at one point pinned up against the wall," and "was resisting," although he claimed that he was simply "defending [him]self." Doc. 41-12, Tr. 85:16-86:24. Deputy Hicks arrived as Jacobsen had Klinefelter pinned against the wall and was actively fighting Klinefelter, which led Hicks to fear for Klinefelter's safety. Doc. 41, p. 16; Doc. 47, p. 10. Hicks assisted Klinefelter in taking Jacobsen to the ground and handcuffing him. Doc. 41, p. 16; Doc. 47, p. 10. Paramedics on scene flushed Jacobsen's eyes with water, but he received no medical or psychological treatment for injuries he claims to have sustained as the result of the

incident. Doc. 41, p. 16; Doc. 47, p. 10. Jacobsen eventually plead to the charge of disturbing the peace and paid a fine. Doc. 41, p. 17; Doc. 47, p. 11. In short, by his own admission, Jacobsen refused multiple times to comply with Klinefelter's directives to leave the ADESA premises, pushed Klinefelter in response to Klinefelter's attempts to remove him, continued to disobey Klinefelter's directive to leave after Klinefelter warned him that he would administer pepper spray, snatched the pepper spray away from Klinefelter, and pinned Klinefelter against the wall before another deputy arrived to help contain him.

Under these facts, the Court can find no clearly established constitutional violation in either the arrest or the use of force. *See Tatum v. Robinson*, 858 F.3d 544, 551 (8th Cir. 2017) ("Tatum's right to be free from the use of pepper spray under these facts was not sufficiently definite. A reasonable officer in Robinson's shoes could have believed he was not violating Tatum's rights by pepper spraying him because Tatum was angrily arguing and was warned before the pepper spray was used."); *cf. Burnikel v. Fong*, 886 F.3d 706, 711–12 (8th Cir. 2018) (noting, in upholding denial of summary judgment to defendant officers, that arrestee "did not appear to threaten anyone, did not resist arrest, and did not fail to comply with the officers' commands"); *Johnson v. Carroll*, 658 F.3d 819, 828 (8th Cir. 2011) ("At the time of this incident, the law was sufficiently clear to inform a reasonable officer that it was unlawful to throw to the ground and mace a nonviolent, suspected misdemeanant who was not fleeing or herself resisting arrest, who posed little or no threat to anyone's safety, who never received verbal commands to remove herself, and whose only action was to engage in a protective maneuver."). Even if Jacobsen was merely trying to defend himself from Klinefelter's attack, under the circumstances, any mistake Klinefelter may have made as to Jacobsen's intentions was objectively reasonable. *See Partlow v. Stadler*, 774 F.3d 497, 503 (8th Cir. 2014) (concluding that officers were entitled to qualified immunity where, even if they

were mistaken in perceiving threat, their mistake was objectively reasonable in light of the circumstances known to them). Qualified immunity thus bars Jacobsen's suit against Klinefelter for any alleged constitutional violation (Count I).

### ii. Official Immunity

Klinefelter argues that official immunity shields him from Plaintiffs' common law claims.

"Under the Missouri doctrine of official immunity, public officers acting within the scope of their authority are not liable for injuries arising from their discretionary acts or omissions . . . ." *Thompson v. Dill*, 930 F.3d 1008, 1015 (8th Cir. 2019) (quotation marks and citations omitted). An officer's "decision to arrest someone" and "decision to use force in the performance of his duties" both are discretionary acts. *Boude v. City of Raymore, Missouri*, 855 F.3d 930, 935 (8th Cir. 2017) (quotation marks and citations omitted).

An officer who acts "in bad faith or with malice" loses official immunity. *Id.* (quotation marks and citation omitted). However, Jacobsen has not suggested that, let alone raised a genuine issue of material fact as to whether, Klinefelter acted in bad faith or with malice. *See* Doc. 47.

In any event, Jacobsen has failed to state "facts from which it could reasonably be inferred that defendant acted in bad faith or from an improper or wrongful motive." *Boude*, 855 F.3d at 935 (noting that bad-faith allegation cannot survive summary judgment if court cannot reasonably infer bad faith from the facts). Klinefelter permitted Jacobsen an opportunity to find a manager before insisting that he leave the ADESA premises; after Jacobsen refused to leave at Klinefelter's direction, Klinefelter attempted to physically remove Jacobsen; Klinefelter warned Jacobsen that he would use his pepper spray if Jacobsen did not leave; Klinefelter and his fellow deputy permitted Jacobsen to have his eyes flushed with water after they had brought him under control; Jacobsen did not receive any further treatment because he declined it. Even construed in

Jacobsen's favor, the undisputed facts and evidence do not suggest bad faith or malice on Klinefelter's part. As such, official immunity bars Jacobsen's and Auto One's tort claims against Klinefelter (Counts II, III, and IV). *See Boude*, 855 F.3d at 935 (finding that officer was entitled to official immunity on negligence and battery claims).

IV. **Conclusion**

For the foregoing reasons, Defendants' motion for summary judgment, Doc. 40, is GRANTED. The claims against all Defendants are dismissed with prejudice. Defendants' request for costs is denied.

s/ Nanette K. Laughrey<br>
NANETTE K. LAUGHREY<br>
United States District Judge

Dated: August 28, 2019
Jefferson City, Missouri